## HAMMERS v. BETHENOD. *
### Patent Appeal No. 3016.

Court of Customs and Patent Appeals.
Dec. 19, 1932.

Frank E. Liverance, Jr., of Grand Rapids, Mich., for appellant.

Charles E. Tullar, of Schenectady, N. Y. (Fairfax Bayard, of Schenectady, N. Y., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner of interferences, awarding priority of invention of the subject-matter of the counts in issue to appellee.

There are seven counts involved, of which counts 2 and 3 are illustrative and read as follows:

"Count 2. A method of electric welding or cutting by means of three independent three-phase arcs produced between the parts to be welded or cut, and two electrodes juxtaposed but insulated from each other, the parts to be welded or cut being connected to the third pole of the source of three phase current.

"Count 3. A method of electric welding or cutting by means of two independent two phase arcs produced between the parts to be welded and two electrodes juxtaposed but insulated from each other, the parts to be welded or cut being themselves connected to the common conductor of a source of two phase current with three wires."

As indicated by the counts above quoted, the invention involved herein relates to polyphase electric arc welding or cutting, and the invention is directed to the use of a two-phase or a three-phase electrical welding device; in the three-phase device, two elec-

*Rehearing denied February 6, 1933.

trodes are connected to two of the three wires of a three-phase electrical supply, said electrodes being placed close together but insulated one from the other; the work upon which the welding is to be done is connected to the third leg of the three-phase system; in the two-phase device, the work upon which the welding is to be done is connected to the common wire of a two-phase, three wire system, the other two wires of the system being connected to two electrodes which are close together but insulated from each other. While it is not an element of either of the counts quoted, the invention also involves an automatic switch or cut-out, the purpose of which is to cut off the supply to the electrodes when the same are so far removed from the work as to break the arc from the electrodes to the work, thus preventing the maintenance of an arc from one electrode to the other after actual welding operations have been terminated.

Appellant's application was filed on November 1, 1926. Appellee's application was filed on January 5, 1926, and for dates of conception and reduction to practice he relies upon an application filed in France on January 8, 1925, for counts 1, 2, 4, and 5, and upon an application filed in France on October 15, 1925, for counts 3, 6, and 7. It is conceded that appellee is entitled to said dates of filing in France for conception and reduction to practice of the invention.

Appellant was formerly a resident of the Netherlands and came to the United States about the first of October, 1920. He testified that he conceived the invention, made drawings of the same, and constructed a device which supported all of the counts in issue before coming to this country; that he brought some of his drawings and some parts of his device with him to this country; that most of his drawings, made in the Netherlands, were lost or destroyed; a drawing was introduced in evidence, however, by appellant as Exhibit A, which he testified was one of the drawings he brought with him from the Netherlands. He further testified that the welder constructed in the Netherlands was so constructed as to operate on a 50 cycle, 380 volt power supply, and that, inasmuch as power is supplied in the United States at either 30 or 60 cycles and 440 volts, the welder described by appellant as having been constructed in Holland could not be operated in the United States. He also testified that some of the parts brought to this country could be used, but that it was necessary to tear down and rebuild the transform-

ers on a larger scale; that upon his arrival in this country he could not speak the English language, had difficulty in finding employment, and, as a consequence, did not begin the construction of a new machine until early in 1924; that early in 1924, and thereafter until he filed his application for patent, he was engaged in business for himself in the operation of an electrical business in Grand Rapids, Mich.; that a drawing, introduced in evidence as Exhibit C, of the machine thereafter constructed was made in April of that year; that this machine was completed in June, 1924, and satisfactorily operated at that time. His testimony with respect to satisfactory operation was in response to questions which will hereafter be referred to. He further testified that thereafter he, together with his associate, one Winterhalter, began the construction of what is termed by appellant "a more perfect commercial machine," embodying the invention, and that said machine was ready for operation in October, 1925.

Appellant contends that the record establishes by a preponderance of evidence that the invention involved was disclosed by appellant to said Winterhalter, to appellant's wife, and to three other persons who were not experts in the electrical art, in the summer of 1924, and that all of said persons witnessed successful tests of the invention. All of said persons testified in behalf of appellant.

Both the examiner of interferences and the Board of Appeals held that conception of the invention prior to his filing date, November 1, 1926, had not been established by appellant; that, if conception should be awarded to appellant in 1924, it was not established that the machine alleged to have been constructed in that year was operated and tested sufficiently to constitute a reduction to practice of the invention, and was therefore nothing more than an abandoned experiment; and that, even though conception be awarded to appellant in 1924, he had not shown diligence from immediately prior to appellee's entry into the field, namely January 8, 1925, as to counts 1, 2, 4, and 5, and October 15, 1925, as to counts 3, 6, and 7, to appellant's filing date, November 1, 1926. Therefore both Patent Office tribunals awarded priority of invention to appellee as to all of the counts in issue. From this award by the Board of Appeals appellant takes this appeal.

While a number of errors have been assigned by appellant, there is really but one question before us for determination, and that is whether, upon the record herein, appellant has established, by a preponderance of evidence, conception of the invention involved before appellee entered the field and reduction to practice prior to that time, or, if not reduced to practice before such time, whether he was diligent from immediately prior to appellee's entry into the field until his (appellant's) reduction of the invention to practice, constructively or otherwise.

As heretofore indicated, appellant relies for corroboration of both conception and reduction to practice of the invention upon the testimony of his associate, Winterhalter, his wife, and three nonexpert witnesses. Appellee seasonably filed in the Patent Office a motion to strike out specified questions and answers of appellant's witnesses because the questions were either leading or called merely for conclusions of nonexpert witnesses. This motion was denied by the examiner. We do not find it necessary to pass upon this question because we are in accord with the conclusions of the examiner of interferences and the Board of Appeals that, even though said motion be denied, appellant has not established, by a preponderance of evidence, either reduction of the invention to practice before appellee's entry into the field, or diligence in reducing it to practice from immediately prior to appellee's entry into the field until appellant did reduce it to practice. Holding this view, we may assume that appellant's conception of the invention is established by a preponderance of evidence as not later than June, 1924, which was some time prior to appellee's entry into the field. We therefore come to an examination of the evidence in the case bearing upon the question of reduction to practice of the invention, assuming, without deciding, that it was conceived by appellant at the time above stated.

The invention involves an apparatus for the welding or cutting of materials. It is clear that such a device, in order to constitute a reduction to practice of the invention, must be tested to demonstrate that the apparatus will accomplish the purpose intended. Careful examination of the testimony discloses that there is no evidence as to what the material was that was claimed to have been welded in 1924, and there is no evidence that a useful weld was accomplished. It is true that appellant gave the following answers to questions propounded by his counsel:

"Q. 79. When was the machine completed and first successfully operated in this country? A. In June, 1924.

"Q. 84. Was this first machine thoroughly and practically operative for arc welding, and did every essential part of it work efficiently when it was first constructed? A. Yes, it was thoroughly operative. The principle of the machine was working in good condition."

The witness Winterhalter, appellant's associate, answered a question propounded by appellant's counsel as follows: "Q. 37. Did this machine operate successfully at that time, June, 1924? A. Yes."

Later in his testimony, with reference to a cut-out device alleged to have been used in said machine in 1924, he testified as follows: "Q. 40. Did it operate successfully? A. Yes."

With reference to two-phase operation, he testified that he saw it operate in 1924, but there is no testimony, by way of conclusion or otherwise, that the two-phase operation was successful.

With respect to the nonexpert witnesses, while they all described the operation of a machine that they saw, which we assume embodied appellant's conception, none of them testified as to the material that was welded or the nature of the weld that was produced.

We therefore cannot hold, upon the testimony of appellant and these witnesses, that the alleged tests of the machine demonstrated that the machine would accomplish the purpose for which it was intended. For these reasons we cannot find that there was a reduction to practice of the invention embodied in the counts during 1924, and we therefore agree with the tribunals of the Patent Office that the construction and alleged use of said machine during 1924 was only an abandoned experiment.

There is no evidence in the record upon which a reduction of the invention to practice can be based prior to October, 1925. Appellant's testimony is that, shortly after said alleged tests in June, 1924, he borrowed $700 from one Peter Horter, to be used for the promotion of a certain three-phase arc welder. This fact is established and the written agreement with respect to such loan is found in the record as an exhibit. The testimony of appellant and testimony on his behalf shows that thereafter work was begun, largely handwork, on the construction of a larger machine which would be commercially useful for all welding purposes. There is no testimony as to the dates of such activities, but both appellant and his associate Winterhalter testified that the second machine was built and ready for operation in October, 1925. This was about ten months after appellee entered the field as to counts 1, 2, 4, and 5, and at about the time of appellee's entry into the field as to counts 3, 6, and 7. Appellant was chargeable with diligence in reducing his invention to practice from immediately prior to January 8, 1925, as to counts 1, 2, 4, and 5, and from immediately prior to October 15, 1925, as to counts 3, 6, and 7. Assuming, without deciding, that, if the second machine had been completed and successfully tested in October, 1925, as alleged, diligence upon the part of appellant should be presumed, because of the character of the construction of the machine, from January, 1925, to October, 1925, we cannot find that it is established by a preponderance of the evidence that said second machine was constructed and ready for operation in October, 1925. Appellant's testimony upon this point, after describing the second machine, is as follows:

"Q. 110. When was the machine again in operative condition. A. October, 1925.

"Q. 111. Did you again use the machine *at that time*, and to what extent? (Italics ours.) A. I used the machine, after it was finished, at the Certain-Teed Products, at Beverly, on steel ovens for about three days; at the Grand Rapids Road Equipment Company on road scraper parts; Michigan Chair Company, on steam boiler; then I put it in the plant of Haven-Busch Wire Company where they used it on sheet metal for two months.

"Q. 112. Did the machine work perfectly satisfactorily on all of these jobs? A. Yes, it did."

It will be observed that the plain effect of this testimony is that, beginning in October, 1925, the machine was ready for use and was tested in the places named in appellant's testimony. Were this testimony of appellant corroborated and there were no other testimony in the record tending to rebut the same, we, of course, should hold that the second machine was completed in October, 1925. The testimony of appellant's associate Winterhalter upon this point, after describing the construction of the second machine, is as follows:

"Q. 55. When was the machine next in usable condition after you altered it from its original construction? A. I would say that was in about October, 1925.

"Q. 56. Did you put it to any use *at that time*? A. Yes, that is in our shop,

*shortly after we had it out on demonstration.* (Italics ours.) ·

"Q. 57. Where did you put it out on demonstration? A. At a wire company, the Haven-Busch Wire Works in Grand Rapids.

"Q. 58. Do you know what type of work it was used on in that plant? A. Sheet iron and steel.

"Q. 59. How long was it in use in the plant? · A. Four weeks I believe approximately. * * *

"Q. 62. *After having demonstrated the machine in that condition in October, 1925,* what did you next do with the machine? A. Well, we of course took it to the shop, and we made new patterns for a new cabinet and a new truck, and immediately started completing the new type automatic control switches. (Italics ours.)"

This testimony, standing alone, clearly corroborates the testimony of appellant that the second machine was constructed and subjected to test beginning in October, 1925. Although appellant called no witnesses who were employees (or officials) of the concerns mentioned in his testimony and that of Winterhalter, nevertheless we should hold that the testimony of these witnesses, standing alone, was sufficient to establish the completion of the second machine in October, 1925.

When appellant closed his testimony, it certainly must have been the intention to have the Patent Office tribunals and a reviewing court, if the case should be reviewed, understand that the second machine was completed and used in October, 1925, or shortly thereafter.

Appellee, however, produced witnesses from the various firms at which said second machine was alleged to have been demonstrated, and it is clearly established, not only by the testimony of such witnesses, but by bills and invoices from appellant himself to the firms named in his testimony, that the use of said second machine by such firms was not in October, 1925, or shortly thereafter, but in the spring of 1927. This is not denied by appellant's counsel, either in his brief or upon oral argument. We may observe, in passing, that the testimony of these witnesses establishes that, when the machine was used in their plants, it satisfactorily accomplished the purpose for which it was intended.

We are loath to believe that appellant and his associate Winterhalter testified intentionally falsely upon this very important point, and we prefer to take the view that both were mistaken in their recollection of when said second machine was completed and ready for operation, and actually demonstrated in the manner described by them.

It is inconceivable to us that the second machine should have been completed in 1925 and no effort made to test it or demonstrate it thereafter for a period of about one year and a half. This is so contrary to the natural course of human action that we must find, from the evidence in the case, that such second machine was not constructed and ready for operation in October, 1925, and probably was not constructed and ready for operation until early in 1927.

While appellant contends that the discrepancy between appellant's testimony as to the tests of the second machine and the testimony introduced by appellee upon that subject is immaterial, it is, as a matter of fact, highly material because, unless we can find that the second machine was constructed in October, 1925, there is a clear want of evidence establishing diligence upon the part of appellant in reducing his invention to practice during the time when he was chargeable with such diligence. We cannot find, upon the evidence, that appellant exercised the diligence required.

The second machine, which was successfully demonstrated in 1927, was designed for operation on three-phase electrical supply only. With respect to reduction to practice of the two-phase machine, the evidence is even less satisfactory than in the case of the three-phase machine, there being nothing in the record with respect to a two-phase machine of a date later than 1924, and we find no corroborating evidence that the invention embodied in the two-phase machine was reduced to practice prior to appellant's filing date, November 1, 1926.

From the record before us, and by which we are governed in arriving at our conclusion, we are compelled to hold that appellant has failed to establish by a preponderance of evidence that he was the first inventor of the invention set forth in the various counts here in issue, and the decision of the Board of Appeals is affirmed.

Affirmed.